We'll proceed now to our last case for the morning. Smith, Securities and Exchange Commission v. Marin. Yes. Good morning. Good morning. Mr. Berkley. Yes. Good morning. I don't see opposing counsel yet. So, um, why don't we wait until we did? Okay. Your honors. That's for the Securities and Exchange Commission. Thank you very much, Mr. Ferguson, Mr. Berkley. Uh, you may begin. Thank you. Good morning, your honors. May it please the court. Lauren Berkley on behalf of Carla Marin, the appellant and MinTrade. This appeal involves two important issues. Whether personal jurisdiction over the appellant comports with the requirements of the due process clause of the fifth amendment, and the second issue is whether a formal order of investigation can serve as a basis to seek contempt sanctions into perpetuity. As it pertains to the first issue, personal jurisdiction to obtain jurisdiction, the following elements need to be established here. The SEC is traveling under 50 USC 78 U subsection C. This allows for jurisdiction to be established where the investigation or proceeding is ongoing or where such person resides or carries on business. However, what is important and where the trial court erred is that this federal statute permits the ability of the jurisdiction to be obtained to the limits of the fifth amendment due process clause, the fifth amendment due process clause specifically states that personal jurisdiction is satisfied. When number one, the non-resident has established minimum contacts with the forum state and to the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice, whether personal jurisdiction is based upon a federal statute providing for worldwide service, the relevant inquiry is whether minimum contacts is with the United States. However, as stated in this circuit in the BCCI case, the respondents contacts with the United States itself do not automatically satisfy the requirements of the due process clause fifth amendment. In applying the fifth amendment due process clause, the analysis of minimum contacts must occur with purposeful contacts with the forum state. So what understanding the law and what is required, which is minimum contacts and the exercise of jurisdiction, not offending the traditional notions of fair play and substantial justice. You now apply those factors to the evidence before the trial court. And what don't you have to establish though, that your client's Liberty interest have been in France. Yes. And, and those Liberty interests are part of the fifth amendment due process analysis. And particularly here we have Ms. Marin is a New York attorney, New York resident has no business conducted in the state of Florida. The true target of the investigation is an individual named Guy Gentile, who is a legal and proper registered Bahamian broker dealer. Again, no contacts with the state of Florida. The entity that the SEC is seeking documents from a mint custody is a Delaware entity that has no contacts with the state of Florida. So it is the contention of the appellant that due process of the fifth amendment requires those minimum contacts and they cannot be established. That is the first element. The second element would be offending traditional notions of fair play and substantial justice. There are the courts would focus on whether the minimum contacts are reasonable, but it also includes the burden on the defendant and the forum interest in adjudicating the dispute. Again, here, Florida has no interest in adjudicating this dispute. Didn't the SEC agree to take Ms. Marin's deposition in New York? Yes. They did offer that as an opportunity, but nonetheless, that still doesn't alleviate the fact that these subpoenas are issued out of the Miami office, out of their Florida office, and they sought to enforce them in the state of Florida. I guess the trouble I'm having is I'm hard pressed to see how even getting on a plane in Westchester County or at Kennedy and LaGuardia and flying two hours and 12 minutes to Miami international airport creates a constitutionally significant inconvenience, even if they required her to be deposed in Miami, what am I missing? What is there about this? She lives in Putnam County. It's not that far to an airport in Westchester or in New York City. And as I said, it's barely more than two hours to fly to South Florida from New York. Where's the constitutionally significant inconvenience? Well, the mere fact that the SEC has the ability to prosecute this and pursue this investigation out of their New York office, but chose to do it out of their Miami office, and I'll get into that in a second, but to answer your honor's question, a United States citizen that has had no minimum contacts, regardless of yes, modern flight and technology should not be hauled into a court where they have no expectation and again, Well, the minimum contacts is with the United States. Well, no, we're really going to the fairness here. There's no question that your client has minimum contacts with the forum. It's the United States. That's the analysis under the fifth amendment. Uh, the question, the question here is the fairness of requiring your client to come to, to get on a plane and come to, to Florida. Well, um, re respectfully, I do believe that the fifth amendment due process does require the minimum contacts analysis with the forum state that is laid out in BCCI, which is a case out of this circuit, um, where the court specifically states a defendant's minimum contacts with the United States do not, however, automatically satisfy the due process requirements of the fifth amendment. And that is a direct case in this circuit in addressing your honor statement about the traditional notions of fair play and substantial justice and the inconvenience. Um, without getting into too much personal issues, my client takes care of, uh, of family members up there. And she has a significant burdens on her, um, that do make it extremely inconvenient for her to come down here. Um, in addition, again, in analyzing whether somebody, according to the case law, um, should reasonably anticipate being hauled into a court. Um, that analysis supplies and here, Ms. Marin has no expectation of being hauled into a Florida court when there's zero Florida activity going on. Um, I see my time is getting down. There is a second issue of the formal order of investigation. So to the extent that I'm not able right now to direct on my opening, uh, rebuttal, I have one question before you go. You keep talking about this BCCI case. That's really a form nine convenes case. Um, that doesn't deal with nationwide jurisdiction at all. It was a civil action against somebody on a RICO claim, and they were arguing about personal jurisdiction in Florida. So I don't know how the BCCI case helps you in this context. Well, I think the BCCI case helps. It wasn't a nationwide jurisdiction case, right? That focused on contacts with the United States. Well, is that correct? It was not a case of jurisdiction based on contacts with the United States. The BCCI case did focus on contacts with the United States because that was a bank that had offices throughout the entire nation and Eastern seaboard. That's why the court in BCCI notes that they are departing from, from the customary review of a defendant. I thought the holding was just on a forum nine convened basis, not jurisdiction. Um, the, the BCCI case did, um, discuss jurisdiction. And I'm talking about the holding of the case. They never said there was lacking jurisdiction. They, they said it was a forum nine convenience. They dismissed it on that ground. That is, that is correct. But the court did go into the personal jurisdiction analysis though, including minimum contacts, as well as the traditional notions of fair play and sustainability. Mr. Berkley, if you want to say something about that other issue, you need, you need to spend a minute doing it. I'll give you a little extra time, but it's not, it's not right to, um, to tell your opponent, you've got to address something I haven't addressed. And I thought, whatever I'll say, you don't have an opportunity for. Correct. Your honor. So I will quickly go ahead and address the issue of the form. Thank you, your honor of the formal order of investigation here, the trial court erred in determining that the focus of the subject investigation had a nexus to the formal order of investigation. The formal order of investigation is the device that authorizes the SEC to investigate individuals or entities for various, um, uh, potential wrongdoing. That formal order of investigation specifically authorized the and whether their employees or officers engaged in violations of the securities act here, the trial court stated that their analysis was whether the SEC investigating guy Gentile and whether or not illegal, um, broker activity is going on is what their investigation is about. And these subpoenas relate to that investigation. That's an incorrect analysis under Powell. It's whether the investigation relates to the formal order of investigation, not what the random purposes of the SEC. Okay. Um, I think we at least have that argument preserved. Um, and, and we can now, um, hear from Mr. Ferguson. Morning, your honors. I may please the court, Matthew Ferguson on behalf of the U S securities and exchange commission. Um, I'll, I'll briefly address the issues common to Marin and trade, and then move on to address the issue unique to each, uh, first, the lower courts below acted well within their discretion and enforcing the subpoenas directed at miss Marin and men trade, both magistrate judges and the district court judges properly applied the correct legal standard, explicitly tracking the four factor tests set forth in us versus Powell. And both courts properly focused on the first two factors. First, the first factor, the investigation had a legitimate purpose. The traders cafe formal order stated. The commission staff were to investigate traders cafe and its affiliates and others for potential violations of section 15, eight of the exchange act that's 15 USC 78. Oh, and that prohibits unregistered broker dealers executing transactions through interstate commerce. This is a subject matter directly within the commission's authority. Second, both courts found that the information soft, the information, the information was relevant to that purpose. There was a direct trail of money or relationships demonstrated demonstrating that relevance. In fact, traders cafe had a master account with sure trader, which was also known as Swiss America, uh, which was a broker dealer registered in the Bahamas, but not in the U S and was owned by God Gentile, a broker dealer who was also registered in the Bahamas, but not the United States. The evidence showed, and the commission explained that sure trade, half of sure traders clients were in the U S and as to Marin money had been transferred from sure trader and Gentile to, um, sorry, us customer funds were transferred from sure trader and Gentile to us bank account held by mint custody, which was owned by Miss Merrick. Regarding mentor, it's simple enough to conclude that because the subpoena was relevant to the investigation and to Gentile and sure trader, then it was within the scope of the formal order, right? Correct. The formal order is written broad enough that it includes not only the name traders cafe, but also other. Other, um, affiliates or others. So that's broad enough because what the commission is doing as it frequently has to do is it has a small piece of information, perhaps a transaction, uh, or a specific target. And as they investigate that, they learn about the connections. They're written broad enough, not only to, um, encompass this specific person named, but also other individuals essentially allowing the commission to follow the evidence where it leads. And here, the evidence for guardian Gentile and sure trader, which leads us to mint custody and leads us to bin trade to row flows directly from that investigation into traders cafe. Um, in addition, the fact that there's, um, that the Marin and mint trade aren't named is irrelevant to whether, uh, there was to a purpose or to undermine the relevancy here. Um, unless it's good court, I'm going to move on to the specific issues regarding Marin and mint trade. Unless the court would like to discuss Powell issues in any more detail. Uh, as regard to, uh, miss Marin, the district court properly exercised personal jurisdiction over merit. The lower court considered in a correctly applied, the two-step test that was set forth in Republic of Panama versus BCCI. The first step in that is that Marin directed our activities at the relevant forum here, the relevant forum, because there is nationwide service is the U S as a whole. And it's undisputed that Marin resides in New York and that mint custody is a Delaware company. So really the first problem that isn't, um, isn't really in question. The second is really related to the burden that Marin bears. Uh, under the due process analysis, she has a burden of demonstrating a constitutionally significant inconvenience that would implicate fifth amendment process as BCCI instructs that would require her showing that the form was so gravely difficult and inconvenient that she was unfairly at a severe disadvantage when compared to the securities and exchange commission, Marin made no such showing, nevermind showing, uh, such constitutionally significant burden. The commission is permitted under 78 U subsection C to bring its enforcement proceeding where it's investigation is taking place, which is what it did bringing its case in Miami, in the Southern district of Florida, where this matter is being investigated. And there are a lot of reasons to do that. This was not a case just about Ms. Marin. There were, um, there were potential defendants and people being investigated who were in the Bahamas. There were people like mint trade who are in the Southern district of Florida. So choosing the Miami courts in order to enforce the subpoena was not unreasonable. Moving on to mint trade. Um, although this, uh, was not addressed in the opening arguments, but it was in the brief, we do think it's important to point out that, um, as recognized in the U S versus Clark Supreme court case, specifically following Powell and Don Senn, what is required in subpoena enforcement proceedings is that a recipient have notice and an opportunity to challenge a subpoena's validity and an adversarial proceeding. That's exactly what happened below your honors. After the application was filed, men trade had ample opportunity to brief the case. Over a couple of months, they made arguments about comedy, about deference to the New Jersey court, and about the logical facial nexus between the formal order of investigation and men trade, they did not contest the showing that the commission had made. Prior to the report recommendation, the United States, I'm sorry, the securities and exchange commission filed the declaration of Jessica Weissman, who was the attorney in charge of the investigation in which she explicitly tracked the application and the four pack for how old factors to set forth the basis for this subpoena to be, excuse me, to be enforced in the almost three months between the filing of that declaration report recommendation. Men trade was silent. They did not seek an evidentiary hearing until after the report recommendation was filed. And they never made a case or a factual showing that demonstrated an evidentiary hearing was necessary. Unless the court has further questions, we would submit that the court should enforce the two subpoena enforcements below. I don't hear it. Any, um, thank you, Mr. Ferguson, um, Mr. Berkeley, you've saved five minutes. Thank you, your honors. If I may just address, uh, first the men trade issues and the Powell factors. First in men trade, the court held no evidentiary hearing, despite requesting an evidentiary hearing in our briefs and the, and the case law requiring the court to have evidence before it. The affidavit referenced by Mr. Ferguson by Ms. Weissman was not submitted until after the matters were briefed. And we had no ability to even respond to that particular affidavit. Hence the commission brought the district court's attention, um, to the declaration and, uh, its response to your objections to the report recommendation. Right. And both you and the commission discussed it, that declaration, then at the show cause hearing before the district court issued its order, enforcing the subpoena. Not in men trade men trade. There was no hearing. Um, the only hearing was in the Carla Marin matter. Um, where the only evidence before the court was the testimony of, uh, Ms. Weissman. Um, so maybe it was no evidentiary hearing, but was there not a hearing in men trade? There was no hearing in men trade, not even a oral argument hearing or any. There, there was no hearing whatsoever. So for the court in men trade to make any ruling, it was done so without any evidence as it pertains to the Powell factors in the Marin matter. I think it's very important. There was a report and recommendation. Yes. And did the commission refer to the declaration there? The, we, we objected to the report and recommendation. And then I believe in response, it was at that point that the commission filled out, uh, I'm sorry, filed an affidavit. That was, that was afterwards. But if, if I can address the Powell fact, let's stop there. But then did you respond to the commission's objection? Um, I don't believe we responded to the commission's objections, but I w I would defer to the record on that. I believe we had a report and recommendation. We filed an objection and then they filed a response. I am confused. Mr. Berkeley about what happens factually. Perhaps you can, can help me with it. As I looked at this record on 11, eight, 19, the district court judge, this is in sec versus men trade technologies. Judge Williams entered an order regarding the SEC's application for an order to show cause and an order enforcing an administrative subpoena, um, the application for show causes granted. And a show cause hearing is set for November 13th, 2019 before judge Williams. Um, and then there's a second order that she enters on November the 13th. Um, where she references, she says the matter is before the court following a show cause hearing held on November the 13th, did she not hold a show cause hearing? The she, she, she did hold the show cause hearing, but it was extremely brief and, and, and I understand it, but I understood you to say to judge hall three minutes ago, that district court held no hearing at all. I was referring to an evidential hearing. I was referring to it. So I apologize if I wasn't clear. Okay. So there's no question that the district court held a show cause hearing at which both sides appeared. And at that hearing, you had the opportunity to bring to the attention of the district court, as did the sec to the, the affidavit from Weissman. Do I have that right? Yes. At the show cause hearing, the, the judge, we did have that show cause hearing at that hearing, the affidavit was filed, but there was no, it was no, it was filed before then, wasn't it? Right. Yes, it was. Meaning at that hearing, it, it had been filed. And it was at that point that you asked for an evidentiary hearing. And at that point, the district court says that ship is sailed. You can't ask for that now. At that. Yes, we, we did bring to the district court's attention that there was no evidentiary hearing. We did, as you had never requested one before. We did request one in, in our initial filings. Okay. If there's, can I, uh, I'm sorry. You take a minute to wrap up Mr. Um, Berkeley. Okay. Um, as it relates to the formal order of investigation, I think it's important to point out when analyzing the Powell factors of the logical nexus and the relation, this formal order of investigation was issued in 2013. It's based upon. Now we're talking about a completely new and different issue. I was giving you a minute to wrap up. Well, the formal order of investigation was part of the initial, uh, discussions in brief, but as it pertains to wrapping up, I believe that personal jurisdiction is required under the fifth amendment due process to analyze minimum contacts, not just with the United States, but with the forum state, you then move on to the traditional notions of fair play and substantial justice and whether or not there is a constitutional significant, uh, burden upon Ms. Marin to appear. I believe that's established through the fact that Ms. requires an individual to have some reasonable expectation to be hauled into a court in a, any particular jurisdiction. Otherwise the government, the, the fallout of this case is that any government agency can issue any subpoena anywhere and require anybody to go. Your time has expired. Um, we have your case, um, and we will be in recess until tomorrow morning. Thank you. Thank you.